APPEAL NO. 23-14225

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

TAMARA OGIER, Trustee for the Bankruptcy Estate of Brittany Dakota Bosley, Case No. 20-70664-SMS, and BRITTANY DAKOTA BOSLEY,

Appellants/Cross-Appellees,

v.

INTERNATIONAL FOLLIES, INC. D/B/A CHEETAH,

Appellee/Cross-Appellant.

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
CIVIL ACTION FILE NO. 1:21-CV-2421-VMC

## INTERNATIONAL FOLLIES, INC.'S
## SUPPLEMENTAL BRIEF

Andrea L. Pawlak
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6807 (Direct)
404-688-6840 (Fax)
a.pawlak@swtwlaw.com

*Counsel for Appellee/Cross-Appellant*
*International Follies, Inc. d/b/a Cheetah*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

A.  Trial Judges:

   The Honorable Victoria Marie Calvert

B.   All attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

   Bosley, Brittany Dakota - *Appellant/Cross-Appellee*

   Brand, Jennifer – *United States Department of Labor Office, Office of Solicitor*

   Bridgers, Charles R. - *Counsel for Appellant/Cross-Appellee*

   DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC - *Counsel for Appellant/Cross-Appellee*

   Herrington, Matthew W. - *Counsel for Appellant/Cross-Appellee*

   International Follies, Inc. d/b/a Cheetah - *Appellee/Cross-Appellant*

   Kneedler, Edwin - Deputy Solicitor General, *United States Department of Justice*

   Mohan, Erin – *Senior Attorney, United States Department of Labor*

   Morlath, Jim - *Senior Attorney, United States Department of Labor*

i

Nanda, Seema – *Solicitor of Labor, United States Department of Labor*

Ogier, Tamara, Trustee for the Bankruptcy Estate of Brittany Dakota Bosley,

Case No. 20-70664-SMS - *Appellant/Cross-Appellee*

Pawlak, Andrea L. - *Counsel for Appellee/Cross-Appellant*

Prelogar, Elizabeth - *Solicitor General of the United States*

Schulten Ward Turner & Weiss, LLP*, Counsel for Appellee/Cross-Appellant*

Su, Julie A., *Acting Secretary of Labor, United States Department of Labor*

Van Buren, Maria, *United States Department of Labor, Office of the Solicitor*


Respectfully submitted this 13th day of August, 2024.

SCHULTEN WARD TURNER & WEISS, LLP

*/s/ Andrea L. Pawlak*
Andrea L. Pawlak, Georgia Bar No. 142541
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Fax)
a.pawlak@swtwlaw.com
*Counsel for Appellee/Cross-Appellant*
*International Follies, Inc. d/b/a Cheetah*

## **<u>TABLE OF CONTENTS</u>**

Certificate of Interested Persons and Corporate Disclosure Statement…    i

Table of Citations ……………………………………………………    iv

ARGUMENT AND CITATION TO AUTHORITY……………………    2

I. *Loper Bright* does not require a limited remand………………….…    2

II. *Loper Bright* does not prevent reliance on the DOL's regulatory definition of "managers or supervisors" using the duties test set forth in 29 C.F.R. § 541.100(a)(2)-(4)………………………………………....…    5

III. Under *Loper Bright*, the Court should disregard the Acting Secretary and Plaintiffs' position that voluntary tipping is barred………………….    11

CONCLUSION……………………………………………………………    14

Certificate of Compliance and Service…………………………………….    16

## <u>TABLE OF CITATIONS</u>

**Cases**

<u>Carts v. Wings Over Happy Valley MDF, LLC</u>, 2023 WL 373175 (M.D. Pa. Jan. 24, 2023)……………………………………………… 13

<u>Cascabel Cattle Co., L.L.C. v. United States</u>, 955 F.3d 445 (5th Cir. 2020)……………………………………………………………………… 9

<u>CFPB v. Townstone Fin., Inc.</u>, – F.4th –, – n.15, 2024 WL 3370023 (7th Cir. July 11, 2024)……………………………………………… 3

<u>Chevron, U.S.A., Inc. v. NRDC, Inc.</u>, 467 U.S. 837, 104 S. Ct. 2778 (1984)………………………………………………………………... 3, 8, 14

<u>Fischer v. United States</u>, 144 S. Ct. 2176 (2024)……………………….. 9

<u>Gelber v. Akal Sec., Inc.</u>, 14 F.4th 1279 (11th Cir. 2021)……………… 3

<u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561 (1995)………………………… 9

<u>Hoffman v. Bear Chase Brewing Co., LLC</u>, 2023 WL 2352926 (E.D. Va. Mar. 3, 2023)…………………………………………………………. 9

<u>Jarecki v. G. D. Searle & Co.</u>, 367 U.S. 303 (1961)…………………….. 10

<u>Key Buick Co. v. Comm'r</u>, 613 F.2d 1306 (5th Cir. 1980)……………... 10

<u>Klinedinst v. Swift Invs., Inc.</u>, 260 F.3d 1251 (11th Cir. 2001)………… 3, 14

<u>Kubiak v. S.W. Cowboy, Inc.</u>, 164 F. Supp. 3d 1344 (M.D. Fla. 2016)… 13

<u>Langston v. Lookout Mountain Cmty. Servs.</u>, 775 F. App'x 991 (11th Cir. 2019)……………………………………………………………………. 14

<u>Lockett v. Pinnacle Ent., Inc.</u>, 2021 WL 960424 (W.D. Mo. Mar. 12, 2021)……………………………………………………………………… 13

<u>Loper Bright Enters. v. Raimondo</u>, 144 S. Ct. 2244 (2024)…………….. *Passim*

iv

Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158 (2007)…………. 7-8

Mayweather v. CVSM, LLC, 2023 WL 3852098 (D. Nev. June 5, 2023) 13

Perez v. Owl, Inc., – F.4th –, –, 2024 WL 3665313 (11th Cir. Aug. 6, 2024)……………………………………………………………….. 3

Roussell v. Brinker Int'l, Inc., 441 F. App'x 222 (5th Cir. 2011)……….. 13

Scalia v. Sofia & Gicelle, Inc., 2020 WL 7828770 (D. Md. Dec. 30, 2020)………………………………………………………………… 13

Silberman v. Miami Dade Transit, 927 F.3d 1123 (11th Cir. 2019)…….. 14

Skidmore v. Swift & Co., 323 U.S. 134 (1944)………………………… 3, 4, 6, 7, 8

U.S. v. Miller, 321 F. App'x 860 (11th Cir. 2009)……………………… 2

Utah v. Su, 2024 WL 3451820 (5th Cir. July 18, 2024)………………… 2-3

Walsh v. Dayemi Org., Inc., 2022 WL 2291706 (S.D. Ill. June 24, 2022) 13

Yates v. United States, 574 U.S. 528 (2015)…………………………… 10-11

**Statutes**

*29 U.S.C. § 203(m)(2)(B)……………………………………….. *passim*

**Regulations**

*29 C.F.R. § 531.52(b)(2)……………………………………. 5

29 C.F.R. § 531.54(b)(1)…………………………………… 12, 13

*29 C.F.R. § 541.100(a)……………………………………… 5, 11

**Miscellaneous**

85 FR 86756-01…………………………………………………………. 5-6

Pursuant to the *Order* [Doc. 46] directing the parties to submit supplemental briefs, Appellee/Cross-Appellant International Follies, Inc. d/b/a Cheetah ("Cheetah") respectfully submits its *Supplemental Brief* to address the Supreme Court's decision in <u>Loper Bright Enters. v. Raimondo</u>, 144 S. Ct. 2244 (2024) [<u>Loper Bright</u>]. Appellants/Cross-Appellees Tamara Ogier, as trustee, and Brittany Dakota Bosley ("Bosley") (together "Plaintiffs") filed their Supplemental Brief on July 31, 2024 [Doc. 48].

There are two (2) primary issues on appeal: (1) whether "managers or supervisors" under 29 U.S.C. § 203(m)(2)(B) is properly defined by use of the Fair Labor Standards Act's ("FLSA") familiar duties test set forth in 29 C.F.R. § 541.100(a)(2)-(4), and (2) whether Cheetah violated 29 U.S.C. § 203(m)(2)(B) by "allowing managers or supervisors to keep" a portion of tips when Bosley says she voluntarily tipped.

Cheetah has asked this Court to affirm the District Court's holding that voluntary tipping is not prohibited by the FLSA and that, as the Acting Secretary has also argued, the definition of "managers or supervisors" "draws from longstanding FLSA criteria to identify employees who have the requisite supervisory responsibility, authority, and involvement in managing to qualify as 'managers or supervisors' who cannot keep other employees' tips within the meaning of the statue." Amicus Br., p. 11.

## ARGUMENT AND CITATION TO AUTHORITY

### I.  *Loper Bright* does not require a limited remand.

Plaintiffs urge this Court to order a "limited remand" to the District Court to address Loper Bright. Pls.' Supp. Br. [Doc. 48], p. 6. A limited remand is not necessary in this matter; rather, this Court may address the questions presented on appeal even under the Loper Bright decision.

Plaintiffs cite the factually inapposite case of U.S. v. Miller, 321 F. App'x 860, 861 (11th Cir. 2009) (limited remand where sentencing guideline was advisory, not mandatory). Plaintiffs also cite Utah v. Su, which did order a limited remand based on Loper Bright, but which was weighing the "ping-ponging directives" of "an outgoing president's 'midnight regulation' against an incoming president's 'day one executive order'" regarding retirement plans under ERISA. 2024 WL 3451820, *1, *1 (5th Cir. July 18, 2024).

As the Utah court explained: "[n]othing in Article III or elsewhere affirmatively prohibits us, as a court of appeals, from answering legal questions in the first instance." Id. at *3. It also acknowledged the "drawbacks" of a limited remand, including "'kicking the can down the road'" and a loss of "judicial economy and efficiency." Id. at *4. Utah is the only case Cheetah has found ordering a limited remand as a result of the Loper Bright decision. Indeed, Utah explained that "we are aware of at least one case in which one of our sister circuits addressed the merits of

a dispute despite noting that <u>Chevron</u> had been overruled while the case was pending on direct appeal." <u>Id.</u> at *2 (citing <u>CFPB v. Townstone Fin., Inc.</u>, – F.4th –, – n.15, 2024 WL 3370023, at *5 n.15 (7th Cir. July 11, 2024)).

Just over a week ago, the Eleventh Circuit addressed <u>Loper Bright</u> in an FLSA case, holding that the Department of Labor's ("DOL") position regarding the phrase "regular rate [of pay]" was "persuasive." <u>Perez v. Owl, Inc.</u>, – F.4th –, –, 2024 WL 3665313, *1, *8 (11th Cir. Aug. 6, 2024). In <u>Perez</u>, the Eleventh Circuit explained that <u>Loper Bright</u> "recently reaffirmed that courts may 'seek aid from the interpretations of those responsible for implementing particular statutes,' and that 'interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning.'" <u>Id.</u> (citing <u>Loper Bright</u>, 144 S. Ct. at 2262). The Eleventh Circuit further noted that "[f]or our part, we have previously recognized the DOL's Field Operations Handbook as a persuasive authority." <u>Id.</u> (citing <u>Klinedinst v. Swift Invs., Inc.</u>, 260 F.3d 1251, 1255 (11th Cir. 2001)).

Pointing to <u>Skidmore</u> deference, in <u>Perez</u>, the Eleventh Circuit held that: "[T]he DOL's consistent position on the meaning of 'regular rate' 'constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" <u>Id.</u> (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944) and <u>Gelber v. Akal Sec., Inc.</u>, 14 F.4th 1279, 1281 n.1 (11th Cir. 2021)).

- 3 -

The Eleventh Circuit also found that the DOL's interpretation was "consistent with the views of other circuits" and "is supported by common sense." Id.

Importantly, the Loper Bright Court acknowledged Skidmore deference, which remains good law. 144 S. Ct. at 2259. Indeed, as the Loper Bright Court explained, when a statute (like the FLSA) leaves an agency with express or implied discretion as to the statute's meaning, the courts are simply tasked with "ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." Id. (internal quotations omitted).

Skidmore deference was established eighty (80) years ago in an FLSA case in which the Supreme Court of the United States held that:

> We consider that the ***rulings, interpretations and opinions*** of the Administrator under this Act, while not controlling upon the courts by reason of their authority, ***do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance***. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Skidmore, 323 U.S. at 140 (emphasis added).

As such, this Court may still look to well-reasoned agency interpretations, such as the DOL's regulatory definition of the phrase "managers or supervisors," as to which the DOL extensively considered various definitions and relied on the long-standing duties test. In contrast, the Court should ignore the Acting Secretary's

(brand new and non-regulatory) position taken in the *Amicus Brief* regarding "voluntary tips" to house moms.

## II. *Loper Bright* does not prevent reliance on the DOL's regulatory definition of "managers or supervisors" using the duties test set forth in 29 C.F.R. § 541.100(a)(2)-(4).

In their Supplemental Brief, Plaintiffs argue that "Loper [Bright] requires that it construe the meaning of 'managers or supervisors' in 29 U.S.C. § 203(m)(2)(B) without deference to the [DOL's] preferred definition." Pls.' Supp. Br. [Doc. 48], p. 7. That is not an accurate statement of law under Loper Bright, as discussed above.

As the District Court explained below, the DOL's regulation set forth at 29 C.F.R. § 531.52(b)(2) "incorporates by reference the definition of overtime-exempt executive employees, which is a three-element test." District Court's Order [Doc. 53], p. 7. The duties test set forth at 29 C.F.R. § 541.100(a)(2)-(4) has been around for a long time. 29 U.S.C. § 203(m)(2)(B) was enacted on March 23, 2018. Within a couple of weeks, on April 6, 2018, the DOL announced its reliance on the duties test to determine who qualify as "managers or supervisors" under Section 203(m)(2)(B). [District Court, Doc. 42-5 (Field Assistance Bulletin 2018-3)]. The DOL issued its final rule on December 30, 2020, explaining that it would codify the use of the duties test to determine who qualify as "managers or supervisors" under Section 203(m)(2)(B) in 29 C.F.R. § 531.52(b)(2). See 85 FR 86756-01.

The DOL carefully concluded that "[u]sing the duties test *disjunctively* [as

Plaintiffs urge]. . . would prevent employees who perform some lower level managerial responsibilities from participating in tip pools, even if they are not bona fide managers or supervisors of the employer." Id. (emphasis added).

As the Supreme Court has recently reiterated in Loper Bright, "'[i]n the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." 144 S. Ct. at 2257; see also id. at 2258 ("Such respect was thought especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time. . . . That is because the longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." (internal quotes omitted)); id. at 2259 ("[T]he informed judgment of the Executive Branch—especially in the form of an interpretation issued contemporaneously with the enactment of the statute—could be entitled to 'great weight.'").

In Loper Bright, the Supreme Court further explained that:

The APA, in short, incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions. **In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes.** Such interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA. *Skidmore*,

323 U.S. at 140, 65 S.Ct. 161. And interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, **may be especially useful in determining the statute's meaning**.

144 S. Ct. at 2262 (emphasis added). Thus, the Supreme Court explained:

In an agency case in particular, the court will go about its task with the agency's 'body of experience and informed judgment,' among other information, at its disposal. *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161. And although an **agency's interpretation** of a statute 'cannot bind a court,' it **may be especially informative** 'to the extent it rests on factual premises within [the agency's] expertise.' . . . **Such expertise has always been one of the factors which may give an Executive Branch interpretation particular 'power to persuade**, if lacking power to control.' *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161. . . .

Id. at 2267 (emphasis added).

Moreover, this Court may consider and, even under Skidmore, which remains good law, defer to the DOL's well-reasoned and carefully considered regulatory use of the duties test to define who qualifies as a "manager or supervisor" under 29 U.S.C. § 203(m)(2)(B), as the District Court did. Id.; Skidmore, 323 U.S. at 140 (emphasis added); see also Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 165-168 (2007) ("[T]he FLSA explicitly leaves gaps, for example, as to the scope and definition of statutory terms . . . [and] provides the Department with the power to fill these gaps through rules and regulations," DOL has "the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties [e.g., through rulemaking]," "[a]nd it is consequently reasonable to infer (and we do infer) that Congress intended its broad grant of definitional authority to the

Department to include the authority to answer these kinds of questions.").

Even Plaintiffs have conceded that "[t]here is some merit in the Department of Labor's reliance upon categories already established in the interpretation of the FLSA for the purpose of defining the new terms "supervisor" and "manager." Such an approach allows both employers and courts to engage in analysis that is already familiar to them, avoiding the need to create entirely new interpretive categories." Appellants' Principal Br., p. 27; see also id. (calling the test a "familiar rubric").

Regardless of the overturning of Chevron, this Court does not have to blindly ignore the fact that the DOL's regulatory definition of "managers or supervisors" already "recogniz[es] that the ordinary meaning of those terms significantly overlap [such that the DOL] promulgated a multi-part test encompassing the range of roles lower- or higher-level 'managers or supervisors' might perform." Amicus Br., pp. 25-26.

As even Plaintiffs recognize, "[i]f the Court finds that the [DOL's] regulation interpreting the words 'managers or supervisors' is persuasive, then the Court may of course defer to it." Pls.' Supp. Br. [Doc. 48], p. 9 (citing Skidmore, 323 U.S. at 139-40). Plaintiffs then issue a "challenge" to this Court: "to read the [DOL's rule] and find even a single reference to any attempt to ascertain the meaning of the statutory text by principled textual analysis." Id. at pp. 4-5. Bafflingly, Plaintiffs previously argued that the Court should adopt a self-serving *modified* version of the

DOL's test for who is a "manager or supervisor." See Appellants' Principal Br., pp. 27-28. And despite urging that this Court must examine "traditional rules of statutory construction," Plaintiffs have never addressed any issues of statutory construction regarding the definition of "managers or supervisors" in 29 U.S.C. § 203(m)(2)(B).

As Cheetah has previously argued, "managers or supervisors" does not require that each word—"manager" and "supervisor"—has a separate and distinct meaning. See, e.g., Hoffman v. Bear Chase Brewing Co., LLC, 2023 WL 2352926, at *1, *3 (E.D. Va. Mar. 3, 2023). Rather, "'[t]he definition[s] of words in isolation however, [are] not necessarily controlling in statutory construction. . . . Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" Cascabel Cattle Co., L.L.C. v. United States, 955 F.3d 445, 451 (5th Cir. 2020).

"First, the canon of *noscitur a sociis* teaches that a word is 'given more precise content by the neighboring words with which it is associated.' . . . That 'avoid[s] ascribing to one word a meaning so broad that it is inconsistent with' 'the company it keeps.'" Fischer v. United States, 144 S. Ct. 2176, 2183-84 (2024). Put differently, "[t]his rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995); see also

Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307 (1961) ("The maxim noscitur a sociis . . . is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."). Thus, "managers or supervisors" are properly determined by the same duties test.

Further, such statutory construction is also consistent with the doctrine of *Ejusdem generis*. "What then is the effect of combining the words [one more precise and one arguably "broader and more open-ended"] into one phrase in the disjunctive? Our statutory construction is aided by the doctrine of Ejusdem generis which, . . . 'warns against expansively interpreting broad language which immediately follows narrow and specific terms. To the contrary, this maxim of statutory analysis counsels courts to construe the broad in light of the narrow, in a commonsense recognition that general and specific words, when present together are associated with and take color from each other.'" Key Buick Co. v. Comm'r, 613 F.2d 1306, 1308 (5th Cir. 1980) (holding that "[a]pplying this canon of statutory construction leads to the conclusion that the phrase [at issue in the statute in that case] 'civil action or proceeding' means litigation"). "The *noscitur a sociis* canon instructs that when a statute contains a list, each word in that list presumptively has a 'similar' meaning. . . .A related canon, *ejusdem generis* teaches that general words following a list of specific words should usually be read in light of those specific words to mean something 'similar.'" Yates v. United States, 574 U.S. 528, 549–50,

1 (2015) (Alito, J., concurrence) (looking at statute using phrase "any record, document, or tangible object," and finding that "the term 'tangible object' should refer to something similar to records or documents. A fish does not spring to mind— nor does an antelope, a colonial farmhouse, a hydrofoil, or an oil derrick.").

The District Court correctly held that "managers or supervisors" is properly defined by the duties test set forth in 29 C.F.R. § 541.100(a)(2)-(4) and that bouncers at Cheetah do not fall within said duties test (the latter point which Plaintiffs have conceded). As a result, the District Court should be affirmed.

### III. Under *Loper Bright*, the Court should disregard the Acting Secretary and Plaintiffs' position that voluntary tipping is barred.[1]

In contrast to the definition of "managers or supervisors," which was nearly contemporaneously defined by the DOL (and then codified by regulation) by using the FLSA's long-standing duties test, this Court should disregard the Acting Secretary's new argument (advanced only in this case and not in any rule, regulation, or even guidance, and adopted by Plaintiffs) that the "allowing" language of 29 U.S.C. § 203(m)(2)(B) equates to "permitting or failing to restrain" tips from

---

[1] Plaintiffs' Supplemental Brief does not address the effect of Loper Bright on this issue at all. Presumably, the Acting Secretary will argue that its position advanced in its *Amicus Brief*, pp. 27-34, is entitled to deference, but that is not true, as made clear by the decision in Loper Bright. In its *Amicus Brief*, adopted in said regard by Plaintiffs, the Acting Secretary argues about dictionary definitions of the word "'allow[]'" and reaches conclusory positions by emphasizing the word "including" in Section 203(m)(2)(B) while completely disregarding the words "keep" and "to keep" and its own regulatory definition of same.

employees to managers or supervisors. Amicus Br., pp. 27-28. Under <u>Loper Bright</u>, this Court is clearly not bound by the Acting Secretary's (and Plaintiffs') position in the *Amicus Brief*.

As Cheetah has previously explained, the Acting Secretary and Plaintiffs' conclusory argument ignores the rest of the statutory language as well as the DOL's own regulatory definition of the word "keep" as it relates to tips. (It also ignores a plethora of case law holding that once an employee has been paid, she may choose to do with her earnings whatever she wants, including voluntary tipping.)

29 U.S.C. § 203(m)(2)(B) only prohibits "allowing managers or supervisors ***to keep***" a portion of tips. (emphasis added). Congress, notably, did not use the word "receive" or any synonym thereof (like "accept" or "get"); rather, it used the word "keep" twice in 29 U.S.C. § 203(m)(2)(B). The DOL's regulations expressly define the "[p]rohibition against keeping tips" under 29 U.S.C. § 203(m)(2)(B), as follows:

> (1) **Meaning of "keep."** Section 3(m)(2)(B)'s prohibition against keeping tips applies regardless of whether an employer takes a tip credit. Section 3(m)(2)(B) expressly prohibits employers from **<u>requiring</u>** employees to share tips with managers or supervisors, as defined in § 531.52(b)(2), or employers, as defined in 29 U.S.C. 203(d). An employer does not violate section 3(m)(2)(B)'s prohibition against keeping tips if it requires employees to share tips with other employees who are eligible to receive tips.

29 C.F.R. § 531.54(b)(1) (emphasis added). The Acting Secretary concedes that "the Department **revised 531.54 [as stated above] to make clear what it 'mean[s]' for employers to 'keep' tips** under 203(m)(2)(B) in the context of such tip pools. . . .

Namely, employers cannot '*require*[] employees to share tips with managers or supervisors,' 531.54(b)(1), and cannot 'allow managers and supervisors to receive tips from [a mandatory] *tip pool*,' 531.54(c)(3), (d)." Amicus Br., p. 33 (emphasis added).

The Acting Secretary (and Plaintiffs) have asked this Court to read into 29 U.S.C. § 203(m)(2)(B) a burden on the employer that does not exist. Under Loper Bright, this Court is not bound by the Acting Secretary's position but, instead, should examine the statute itself (which clearly contains no prohibition on voluntary tipping) and the case law cited by Cheetah, which further demonstrates that voluntary tipping is not barred by the FLSA. See, e.g., Roussell v. Brinker Int'l, Inc., 441 F. App'x 222, 230 (5th Cir. 2011); Mayweather v. CVSM, LLC, 2023 WL 3852098, at *5 (D. Nev. June 5, 2023); Carts v. Wings Over Happy Valley MDF, LLC, 2023 WL 373175, at *7 (M.D. Pa. Jan. 24, 2023); Walsh v. Dayemi Org., Inc., 2022 WL 2291706, at *4 (S.D. Ill. June 24, 2022); Lockett v. Pinnacle Ent., Inc., 2021 WL 960424, *1, *6 (W.D. Mo. Mar. 12, 2021); Scalia v. Sofia & Gicelle, Inc., 2020 WL 7828770, at *9 (D. Md. Dec. 30, 2020) ("DOL therefore takes the view that 'a tipped employee may voluntarily share tips with whichever co-workers the tipped employee chooses.'"); Kubiak v. S.W. Cowboy, Inc., 164 F. Supp. 3d 1344, 1355, 1361 (M.D. Fla. 2016). As Cheetah previously noted, the DOL's new subregulatory guidance was "not entitled to Chevron deference" even before Loper

Bright, nor does it even address (or prohibit) the voluntary tipping at issue here. Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1255 (11th Cir. 2001).

Once an employee has received her tips, she can do with them what she chooses. 29 U.S.C. § 203(m)(2)(B) does not restrict what Bosley could do with her tips and it does not mandate Cheetah to track Bosley's tips after she has been paid in accordance with the FLSA, provided that Cheetah is not *requiring* or allowing managers or supervisors *to require* her to tip out.

## CONCLUSION

"Under [this Court's] right-for-any-reason rule, [it] may affirm based on any ground supported by the record." Langston v. Lookout Mountain Cmty. Servs., 775 F. App'x 991, 1001 (11th Cir. 2019); Silberman v. Miami Dade Transit, 927 F.3d 1123, 1137 (11th Cir. 2019). Thus, although Loper Bright overturned Chevron, it did not eliminate deference entirely and does not change the result reached by the District Court to grant summary judgment to Cheetah. The Court may still look to well-reasoned and carefully considered agency interpretations, such as the DOL's regulatory definition of "managers or supervisors" which uses the long-standing duties test. However, the Court should disregard the Acting Secretary's position (adopted by Plaintiffs) advanced only in this case regarding alleged voluntary tipping, as it is ignores the full text of 29 U.S.C. § 203(m)(2)(B), is inconsistent with the DOL's own definition of "keep[ing]" tips, and ignores a plethora of case

- 14 -

law holding that the FLSA, as protective a statute as it is, contains nothing barring an employee from doing with her earnings what she chooses.

Thus, this Court should affirm the District Court's grant of summary judgment to Cheetah, as Cheetah did not violate 29 U.S.C. § 203(m)(2)(B) because it did not "allow[] managers or supervisors to keep [require]" Bosley's tips outside of the tip pool (which was not challenged) and because bouncers are not "managers or supervisors" as set forth in the regulatory definition promulgated by the DOL.

Respectfully submitted this 13th day of August, 2024.

SCHULTEN WARD TURNER & WEISS, LLP

*/s/ Andrea L. Pawlak*
Andrea L. Pawlak, Georgia Bar No. 142541
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Fax)
a.pawlak@swtwlaw.com
*Counsel for Appellee/Cross-Appellant*
*International Follies, Inc. d/b/a Cheetah*

<u>**CERTIFICATE OF COMPLIANCE AND SERVICE**</u>

I hereby certify that this filing complies with the Order [Doc. 46], entered on July 23, 2024, directing the parties to file supplemental briefs not to exceed **15 pages**.

I further certify that I have this day electronically filed the foregoing using the Court's CM/ECF system, which automatically sends email notification to all counsel of record.

So certified this 13th day of August, 2024.

SCHULTEN WARD TURNER & WEISS, LLP

*/s/ Andrea L. Pawlak*
Andrea L. Pawlak, Georgia Bar No. 142541
Schulten Ward Turner & Weiss, LLP
260 Peachtree Street, N.W., Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Phone)
404-688-6840 (Fax)
a.pawlak@swtwlaw.com
*Counsel for Appellee/Cross-Appellant*
*International Follies, Inc. d/b/a Cheetah*
